Good morning. May it please the court. My name is David Anthony. I represent the appellant, Joe Armstead. I'd like to reserve three minutes for rebuttal, if I may. At Mr. Armstead's trial, the prosecutor intended to present testimony showing that Mr. Armstead was loitering outside of the home of David Leal with the intent to commit murder. The manner in which the prosecutor presented that information is the source of our claim that the prosecutor committed misconduct on redirect examination when they elicited evidence of other bad acts. On direct examination of State witness Daniel Poole, testimony was brought forward that Mr. Poole had seen, quote, dealers over there on the corner of the trailer park where the bend was. Could you, counsel, could you just remind me, did the Nevada Supreme Court assume that there was misconduct? In the Nevada Supreme Court's opinion, it's their first ruling was that there was no misconduct because they affirmed the factual finding that was made by the State trial judge that the corner that was referenced on redirect examination was not proven to be the same corner as the one where the dealers were seen on direct examination. So my response would be that their first finding was that they affirmed the factual finding of the trial judge, that there was no connection or that there was no proof that we were talking about the same corner. The second holding is that, and this, the second holding was their holding about harmless air, and what they say is that regardless of what happened, they held that the air was harmless because Mr. Armstead wasn't able to show beyond a reasonable doubt that the air was harmful. And that's one of the reasons that the Nevada Supreme Court's decision was contrary to clearly established law in this case. So that's what we're actually reviewing is that second prong, right? Well, correct, Your Honor. We wouldn't find a constitutional issue, I think, on the first determination, at least on the facts of this case. So what you want us to focus on is whether they made a constitutional error in the burden of proof of harmlessness. Correct, Your Honor. And the reason that I mention the factual finding is because under the AEDPA, there are other conditions for relief. We only need to satisfy one of them. And the reason that I bring up the factual finding is that one of the conditions to relief under the AEDPA is to show that the State court's decision was an unreasonable determination of the facts in light of the evidence presented. It's our contention that if you look at the testimony on direct examination and the testimony on redirect examination, the only inference that one could draw was that the testimony placing Armstead on the corner with the four individuals has to relate to his testimony on direct examination that those four individuals are drug dealers. The reason that that's prejudicial is because, obviously, that's evidence of other bad acts. As a matter of State law, if the State wants to present evidence of other bad acts, they're required to give notice to the defense. They're required to seek a hearing outside the presence of the jury. They're required to prove the other bad act by clear and convincing evidence. And they're required to obtain a ruling from the trial judge that the evidence of other bad acts is not substantially outweighed by the potential for unfair prejudice. Now, there's no dispute that that didn't happen in this case. There was no preliminary finding. And if you look at the affidavits that the prosecutors submitted after trial, they both said that they intended to keep this other bad act evidence away from the jury. They acknowledged that some of the State witnesses believed that Mr. Armstead was a drug dealer. And they said they tried to keep that away from the jury. However, if you look at what happened on redirect examination, Mr. Poole, the State witness, is asked about a conversation that he had with a female who asked him for a cigarette. There was some hearsay issues. The objection was sustained. Directly after that, the prosecutor asks about the four individuals that the witness referred to on direct examination. And then the follow-up question was, once Mr. Poole identified Mr. Armstead, the prosecutor specifically asked whether Mr. Armstead was one of the four individuals that was seen on the corner. It's our position that the prosecutor committed misconduct here because the inference that can be drawn, there's only one inference, and that is that the person who was on the corner, the individuals on the corner, were the same individuals that were referred to on direct examination. So it's our position that we're entitled to relief because we can show that the Nevada Supreme Court's decision was contrary to Chapman v. California because they placed the burden of proof on the wrong party. And it's also our position that their decision was an unreasonable determination of the facts because there was simply no other inference to be drawn but that they were referring to Mr. Armstead as one of the drug dealers that was seen on the corner. What does that have to do with murder? Excuse me? What does that have to do with murder witnessed by four people? The reason this is relevant to the issue of murder is because it goes to the issue of intent. The State's position was that Mr. Armstead was an individual who was collecting on a debt, and he was waiting and loitering outside of the home of Mr. Leal with the intent to commit murder. So the reason that this is relevant to the issue of murder is it goes to the issue of intent. The issue of intent was a hotly contested issue between the parties at the trial. We don't have to infer. All we have to do is look at the witness's statement at the time of or just immediately before the shooting. I want my M.F. money. That's pretty clear. So all of this about individuals loitering on one corner or another and maybe there's a drug transaction going on, we don't need that. And this is why I think harmless error was found. We've got four individuals who heard the altercation, the shooting, his actions when he left the location after the shooting. This is all pretty clear, isn't it? I agree with the Court that it is pretty clear that Mr. Armstead was the person who shot Mr. Leal. I don't think that anyone is standing here today contesting the fact that Mr. Armstead shot Mr. Leal in the chest. Okay. So that's not something I'm contesting at all. But did it matter whether it was a drug debt as opposed to any other debt? Well, I think it matters that it was a drug debt because the State wants to flesh out the inferences about the fact that the trailer is being scoped out. And so the only evidence that comes out as this bad reference to the possibility that Mr. Armstead is a drug dealer, that's the only evidence that the State relies upon on rebuttal in their closing argument. But what difference would it make if the trailer was being scoped out for a drug debt or a non-drug debt? What difference would that make to the intent showing? Well, it certainly, when you have a close case and when intent is the issue, there's certainly a risk of prejudice that arises due to the possibility that this is inadmissible propensity evidence. And so on that ground, when you're talking about a close case where intent's the issue, that could certainly give rise to prejudice is that the fact that that propensity evidence came in, it could taint the jury and convince them that, you know, Mr. Armstead was a bad person in addition to whatever the nature of the debt was. I'll reserve the rest of my time for rebuttal. I'll reserve it, fine. Counsel, go ahead. Good morning, and may it please the Court. My name is Heather Proctor, Deputy Attorney General with the State of Nevada, and I have the honor of representing the Respondents in this matter. It is the Respondents' position that the statements made by Mr. Poole during both direct and redirect examination had nothing to do with Armstead connecting him to the drug dealers on the bend versus identifying Mr. Armstead on a corner in the trailer park. There was no connection to Mr. Armstead in two drugs. There was no connection between Mr. Armstead and the victim, Mr. Leal, in the NAA drug deal, or that the struggle and ultimate murder of Mr. Leal had anything to do with drugs. What was the purpose of introducing that evidence, then? Your Honor, the State's argument was that the defendant, Mr. Armstead, brought the weapon into the trailer with him. That was supported by several pieces of evidence. One piece of evidence that was introduced was that the trailer in which Mr. Leal, the victim, lived had no locking mechanism on his front door, that he had his bed, which was in the living area. There was a knife found by the bed but no gun, and that Mr. Armstead and Mr. Leal never went near the bed during the struggle or prior to the struggle. And if the drug dealers were introduced to show that it was a bad area in which Mr. Leal had lived, and if he had had a gun based on that bad area, based on drug dealers being on a corner in the trailer park where he lived, the gun would have been next to his bed and not in the bathroom. But what did that have to do with identifying the defendant as one of the people who was standing on the corner? Your Honor, that was Mr. Poole identified Mr. Armstead as an individual standing on a corner. That was the first identification Mr. Leal had of the petitioner when he was going into the trailer park was of him standing on a corner, and then that a few minutes after he arrived in the trailer that Mr. Armstead came into the trailer. You still haven't answered her question. What relevance was this? When was this ever brought up? You have him in the trailer. Why is it necessary to bring up the fact that before he came in the trailer he was standing out on a corner perhaps talking to a drug dealer or buyer? Why was that relevant? Your Honor, it is our position that the trailer, the reference to the corner, had nothing to do with the reference to the drug dealers on a bend in the trailer. That was simply his first view of Armstead. Moreover, even if you accept the petitioner's arguments that the evidence tended to show the petitioner was a drug dealer, the evidence was permissible under Nevada revised statute 48.045 to show motive, which is the petitioner's arguments. The petitioner argues that the evidence was improperly introduced under state procedural law and Petrocelli. However, that is a question of state law and not a question before this Court. So even if you accept that the evidence tended to show propensity, that it tended to show that he was a drug dealer and showed motive for this murder, that evidence, if there's no constitutional impermissibility as to drug due process for the introduction of that evidence to show motive. I'm not certain that it does.  But his utterances at the scene pretty much tell us what the motive was when he said he wanted his money. But I'm not understanding then why it was necessary to bring in this evidence about this corner. And now it has gotten you in trouble. Yes, Your Honor. As I stated, that was the drug dealing was to show the location of the gun, where the gun came from, that the petitioner brought the gun in with him, that if he'd had the gun, it would have been in the trailer park next to the bed. Okay. Well, counsel, you seem to be, understandably perhaps, but focused on whether or not we're involved in assessing the court's decision about the testimony as to whether or not it was misconduct to bring it in. Is that the thrust of what your argument is going to? As to the? Well, is that yes or no? To the misconduct? Yes. The first issue? Yes. Well, the Nevada Supreme Court says Armstead did not object to the prosecutor's questions. The failure to object to prosecutorial misconduct includes a pullout review. So they understood it as a prosecutorial misconduct issue, correct? Correct. Okay. So then they go on and they say, unless the alleged misconduct constitutes plain error and affected the defendant's substantial rights. So it seems to me the question we're grappling with here is, and I'm a little unclear from counsel's argument, I have to confess, is whether or not the determination on the assumption that it was prosecutorial misconduct, the determination whether there was harm constitutionally based harmful error or harmless error, to state it the opposite way. So what is it we're focused on here? Yes, Your Honor. The Nevada Supreme Court did use a Chapman analysis to find that there was no harmless error, and I would certainly. There was no harmless error? I'm sorry. That there was no prejudice beyond a reasonable doubt. That the any error that might have occurred, the Nevada Supreme Court was not, did not specifically say that there was or was not harmless error. The Court said that there was no prejudice beyond a reasonable doubt based on the overwhelming evidence of guilt that was presented. What's that mean? That the my interpretation of the Nevada Supreme Court's findings was that there was no harmless error, that even if the. So if there was no harmless error, that means there is harmful error? Excuse me. I misstated that. I apologize. No. The Nevada Supreme Court stated that any error that might have occurred was harmless beyond a reasonable doubt. Excuse me. Applying Chapman. Applying Chapman, yes. And that would have been supported by the evidence that even if it was suggested that the petitioner was a drug dealer, the evidence, as the Court has already stated, there were two witnesses that identified him coming into the trailer, that the struggle occurred, his statements during the struggle that he wanted his gun, that he had the gun during the struggle, that he left with the gun in his hand, his statement as he left the trailer, all centered around a transaction of some sort where the petitioner, excuse me, the student owed the petitioner money of some sort from some transaction. And the Nevada Supreme Court found that that was not prejudicial to the petitioner and that if there was any error, it was harmless. Okay. All right. Thank you. Thank you, Your Honors. Very briefly, just to respond to some of the arguments. Why don't you just focus on this because I don't, I still am unclear. What is the constitutional error on the finding of no prejudice? Well, the constitutional error is the prosecutorial misconduct. The issue about prejudice is the failure to apply Chapman. And specifically you're disagreeing with counsel reading of the statement of the Nevada Supreme Court as effectively applying Chapman. You're saying they didn't. I disagree that they effectively applied Chapman. And I brought forward the brief or, excuse me, their opinion, and their opinion says, we conclude that Armstead failed to demonstrate that these exchanges were prejudicial beyond a reasonable doubt. That statement means that they placed the burden of proof on Armstead as opposed to the State to show that the statements were prejudicial. By doing that, they reversed the burden of proof to Mr. Armstead. And it's very clear under Chapman, ever since that case, that the burden of proof always rests with the State to prove that a constitutional violation was harmful or harmless beyond a reasonable doubt. Thank you. Thank you. All right. The case argued is submitted.
judges: Fisher, Rawlinson, Cjj Wright (C. Cal.), Dj